# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| TOMA DUHANI,  <br>   Plaintiff,  <br><br>vs.  <br><br><br>TOWN OF GRAFTON and  <br>TIMOTHY P. MCINERNEY, in his capacity as  <br>Town Administrator of the Town of Grafton,  <br>   Defendants. | CIVIL ACTION  <br>NO. 12-40103-TSH |

## MEMORANDUM OF DECISION AND ORDER
### September 26, 2014

**HILLMAN, D. J.**

### Background

Toma Duhani ("Plaintiff" or "Duhani") has filed a Complaint against the Town of Grafton ("Town") and Timothy P. McInerney, in his capacity as administrator of the Town of Grafton ("McInerney" and, together with the Town, "Defendants") alleging a claim under the federal civil rights act, 42 U.S.C. §1983 for violation of his procedural due process rights under the Fourteenth Amendment. More specifically, Duhani alleges that the proceedings whereby he was terminated from his position as the Town's Director of Public Works were fundamentally unfair because they were not conducted before an impartial hearing officer and/or were predetermined.

This Memorandum and Decision addresses Defendants, Town of Grafton and Timothy P. McInerney's Motion For Summary J. (Docket No. 20). For the reasons set forth below, that motion is *granted*, in part and *denied*, in part.

**Standard of Review**

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted).

"'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

### Facts

Duhani was employed as the Director of the Department of Public Works ("DPW") for the Town. McInerney, as the Town Administrator, is the appointing authority for the Director of the DPW. Prior to the incident which led to his termination, Duhani's interactions with McInerney were professional and the two had no issues.

Sometime in 2008, David Crouse ("Crouse"), the Town Highway Foreman, told Duhani that the Town needed catch basin framing covers ("catch basin covers"). Crouse was responsible for the daily operation of the DPW. Duhani told Crouse to "go ahead and get them." Crouse purchased the catch basin covers. It was Duhani's understanding that pursuant to State procurement laws, an item purchased by a municipality that costs less than $10,000 did not need to be put out for public bidding, but the municipality was required to obtain at least three quotes before purchasing the item.[1] Town policy required written purchase orders for items costing more than $2,500. The contract was then awarded to the party that met the bid specifics (*i.e.* quality and amount) and submitted the lowest quote. The department ordering the item prepared the purchase order and submitted it to the Town Administrator, in this case McInerney, before sending it to the Town Accountant for payment. Duhani expected that Crouse would perform the ordering and acquiring of the catch basin covers in accordance with the aforementioned requirements. Duhani understood that the Town had obtained quotes for catch basin covers at

---

[1] Defendants have asserted this fact and Plaintiff has admitted it, making it undisputed. The law in effect at the time actually provided that for an item costing greater than $5,000 and less than $25,000, the municipality was required to seek three written or oral price quotations (the municipality could enact a policy requiring that quotations be submitted in writing). An item costing less than $5,000 could be procured "through the exercise of sound business practices." *See* Mass.Gen.L. ch. 30B, §4 (2008).

3

the beginning of the fiscal year. Exceeding the purchase order limit had previously happened in the Town and within the DPW.[2]

Crouse ordered the catch basin covers. In late Fall 2008, when Duhani's assistant, Beth Thurlowe ("Thurlowe") received the invoices for the catch basins covers ordered by Crouse, she informed Duhani that the invoices exceeded the $2,500 limit.[3] Although the catch basin covers had already been ordered and installed, Duhani instructed Thurlowe to acquire the required bids and prepare the purchase order. Duhani then delivered that purchase order to McInerney. Included with the purchase order were quotes for the catch basin covers that Thurlowe had obtained after the catch basin covers had already been purchased and installed. One of the "quotes" was actually a doctored purchase order from the company that had supplied the catch basin covers; Thurlowe had changed the purchase order to make it appear as a quote. Duhani had only quickly reviewed the purchase order prior to giving it to McInerney and was not aware that the supplier's purchase order had been "doctored." Duhani's recollection is that when he

---

[2] I have given Duhani the benefit of the doubt in accepting this statement of fact. At best, his testimony, which he cites in support, states that he believes that there may have been such instances in the past (Thurlowe told him), but he can't think of any specific examples. *Mem. In Sup. Of The Defs, Town of Grafton and Timothy P. McInerney's Mot. For. Sum. J.* (Docket No. 21)("*Defs. Mem.*"). *Ex. C.*("*Duhani Dep.*"), at p. 42, lines 7- p. 43, line 6. In fact, he's not even sure he was Director of the DPW at the time. In his statement of material facts, Duhani also asserts that when materials were purchased in excess of $2,500 without getting the requisite quotes, it was common practice that the purchase order be retroactively created, the bids which were routinely in place from the start of the fiscal year attached and the purchase order forwarded to the appropriate authority for signing. *Pl. Toma Duhani's Statement Of Facts In Opp. Of The Defs., Town of Grafton And Timothy P. McInerney's Mot. For Sum. J* (Docket No. 26)("*Duhani's Statement of Facts*"), at ¶ 19 . However, the deposition testimony he cites in support of this statement simply does not support it. *See Id.*, at p. 42 lines 7-17.

[3] In his concise statement disputing Defendants' statement of material facts, Duhani asserts that Thurlowe did not inform that the cumulative price of the catch basin covers exceeded $2,500 until her return from medical leave *in February 2009*. *See Pl. Toma Duhani's Resp. To Statement Of Facts In Sup. Of The Defs, Town of Grafton and Timothy P. McInerney's Mot. For. Sum. J.* (Docket No. 27), at ¶ 11. In his own statement of material facts, he states that Thurlowe informed him when she returned from medical leave in late 2008. *See Duhani's Statement Of Facts*, at ¶ 13. In both instances, Duhani cites the identical authority to support his factual statement-- his own deposition testimony. *See Duhani Dep.*, at p. 41, lines 5-23. However, the cited deposition testimony actually states that Thurlowe informed Duhani *in September or October of 2008 when the invoices came in*. Given the nature of Duhani's claim, neither these facts nor the ones mentioned in the preceding footnote are material to the issues before the Court. Nonetheless, the Court is disturbed by these "misstatements."

4

dropped the purchase order off to McInerney, he explained that the items had already been ordered and he was submitting the purchase order retroactively. McInerney signed the purchase order immediately.

Approximately five months after Duhani gave McInerney the purchase order for the catch basin covers, McInerney met with Duhani and told him that he was not aware that the catch basin covers had been purchased prior to the submission of the purchase order. He also told Duhani that the quotes submitted with the purchase order had been manipulated. Duhani denied being aware of these facts.

On April 28, 2009, the Town served Duhani with a Notice of Intent to Terminate. Around this same time, it was explained to Duhani that his termination was related to issues surrounding the purchase of the catch basin covers. On April 29, 2009, Duhani requested a public hearing. A pre-termination hearing was held on May 12, 2009; Duhani appeared at the hearing with his counsel. Duhani's lawyer requested that McInerney recuse himself as the hearing officer because he would also be testifying as a fact witness. He requested that an impartial non-Town employee be engaged to reside over the hearing. The Town denied the request after consulting with Town counsel. Thurlowe, Crouse and Patricia Fay, the Town Accountant, appeared at the hearing and testified. During the pre-termination hearing, Duhani was allowed to present evidence and cross-examine witnesses. McInerney presided over the hearing and testified as a fact witness. Duhani testified that it was Thurlowe who had doctored the catch basin cover purchase order to look like a quote. Thurlowe confirmed this fact.

On or about May 19, 2009, Duhani was informed by the Town that he was terminated. In the termination letter, McInerney informed Duhani that he did not find his (Duhani's) testimony credible as it conflicted with his own testimony, as well as that of Thurlow and Crouse on

5

material issues. On June 3, 2009, Duhani filed a grievance contesting his termination, in accordance with the Town's By-Laws[4]. Duhani and McInerney agreed to skip Steps 1 and 2 of the grievance procedure and to proceed directly to Step 3, a meeting before the Board, which took place on June 23, 2009. On June 30, 2009, the Board denied the grievance.

The former Town Administrator, Natalie Lashmit, indicated to Duhani prior to her departure that there were members of the Board that wanted the position of Director of the DPW eliminated. She also told him there was talk of "getting rid" of him in order to eliminate the position and create a position of Assistant Town Administrator. After Duhani's termination, the position of Director of the DPW was never filled. The position of Assistant Town Administrator was created and filled.

## **Discussion**

Duhani asserts that his due process rights under the Fourteenth Amendment were violated because he was denied the right to have a fair and impartial hearing officer preside over his pre-termination hearing. Defendants argue that Duhani's pre-termination hearing complied with due process and even if it didn't, he the proceeding before the Board provided adequate post-deprivation hearing before an impartial decision maker, the Board.

---

[4] The Town's By-Laws provide for a three-step grievance procedure. In Step 1, the employee is required to file a written grievance with his supervisor or department head within 10 working days of the occurrence giving rise to the grievance. The supervisor/department head must meet with the aggrieved employee and provide a written response within 10 working days of the meeting. Step 2 then provides that if the grievance is not settled at Step 1, or within 10 working days of the response required from the supervisor/department head, the employee may submit a written grievance to the Town Administrator. The employee and Town Administrator then must meet and the Town Administrator provide a written response within 10 working days of the meeting. Step 3 then provides for the employee to submit a written grievance to the Board of Selectmen ("Board"). The Board then must meet with the employee at its next regularly scheduled meeting and render a final decision within 10 working days of the date of that meeting. *See Mem. In Sup. Of The Defs, Town of Grafton and Timothy P. McInerney's Mot. For. Sum. J.* (Docket No. 21), *Ex. E.* (Town of Grafton General By-Laws, Article 20, Personnel By-Law), at Section 4-17.

6

In order to establish a claim under Section 1983, Duhani must establish that a person acting under the color of law denied him a right secured by the constitution or by federal law. The only question in this case is whether Duhani's constitutional rights were violated.

> The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving any person of 'life, liberty, or property, without due process of law.' This prohibition guards against 'the arbitrary exercise of the powers of government.' …
>
> The Due Process Clause has both procedural and substantive components. The former 'ensures that government, when dealing with private persons, will use fair procedures.' The latter 'safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.'

*Harron v. Town of Franklin*, 660 F.3d 531, 535-36 (1st Cir. 2011)(internal citations and citations to quoted authorities omitted). Duhani has asserted a violation of his procedural due process rights; his claim is based on an alleged deprivation of a property right. " 'We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.*, at 537. "Property interests are created and defined by 'existing rules or understandings that stem from an independent source such as state law.' In order to qualify as a property interest, state law must give an 'individual a legitimate claim of entitlement to some sort of benefit.' " *Alvarado Aguilera v. Negron*, 509 F.3d 50, 53 (1st Cir. 2007). Defendants do not dispute that Duhani had a property interest in his continued employment. The Court will therefore, focus its discussion on the issue of whether the procedures pursuant to which he was terminated were constitutionally sufficient.

Courts generally do not consider pre-termination and post-termination procedures in isolation, but rather review the process in totality. *See Brothers. v. Town of Millbury*, CIV.A. 14-10122-TSH, 2014 WL 4102436 (D. Mass. Aug. 14, 2014) and cases cited therein. As to the pre-

termination hearing, "[t]he Supreme Court made clear in [*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–42, 105 S.Ct. 1487 (1985)] that when an employee is entitled to some process after termination, the purpose of the termination hearing is solely to serve as 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' *Id.*, 470 U.S. at 545–46, 105 S.Ct. 1487. It 'need not be elaborate' as long as an employee receives (1) 'oral or written notice of the charges against him,' (2) 'an explanation of the employer's evidence,' and (3) 'an opportunity to present his side of the story.'" *Chmielinski v. Massachusetts*, 513 F.3d 309, 316 (1st Cir. 2008). Duhani does not contend that any of these basic requirements were lacking. Instead, he argues that the pre-termination hearing itself was inadequate because the McInerney, the person who presided over the hearing and made the decision to terminate him, was also a fact witness and therefore, was not impartial.

Generally, "it is not required that a hearing be conducted before an 'impartial decisionmaker.' In fact, the hearing may be presided over by the employer himself." *Acosta-Sepulveda v. Hernandez-Purcell*, 889 F.2d 9, 12 (1st Cir. 1989). However, in *Acosta-Sepulveda*, the First Circuit did recognize that "an arbitrary and capricious decision by the hearing examiner, when considered in conjunction with other evidence can be sufficient in a proper case to support a finding that the hearing was pretextual. And an aggrieved employee may have state law remedies available to combat a wrong decision." *Id.*, at n.2. *See Cronin v. Town of Amesbury,* 895 F.Supp. 375 (D.Mass. 1995)(due process does not require state to provide impartial decision maker at pre-termination hearing; state is obligated only to make post-termination redress available for any unlawful deprivation). However, "'a plaintiff alleging impartiality must overcome the presumption that administrators are "men of conscience and intellectual discipline,

capable of judging a particular controversy fairly on the basis of its own circumstances," and must demonstrate an actual risk of bias or prejudgment.' This actual risk must be shown by 'a specific demonstration of partiality,' more than the fact that 'the ultimate decision-maker ... had also made the challenged personnel decision.' " *Jackson v. Norman,* CIVA 0511429-RWZ, 2006 WL 1704296 (D.Mass. June 19, 2006)(internal citations and citation to quoted case omitted).

In order to establish that he was deprived of his procedural due process right to a pre-termination hearing, a plaintiff must show more than bias, he must show that the pre-termination hearing was meaningless because, for instance, the outcome was pre-ordained, or the bias was so severe as to undermine the concerns and goals of the hearing. As one court aptly put it, "it is clear that when the evidence establishes that the outcome of a municipal employee's pre-termination hearing has been predetermined regardless of the proof presented, the concerns and goals of the pre-termination hearing as set forth in *Loudermill* have not been met. In such cases, there is no meaningful opportunity to invoke the decision maker's discretion, and there is no possibility that a mistaken decision can be avoided." *Wagner v. City of Memphis*, 971 F.Supp. 308, 318-19 (W.D. Tenn. 1997).

First, I do not find that Duhani has established that McInerney was biased because of the multiple roles he held during the hearing. Case law makes clear that Duhani was not entitled to an impartial adjudicator, therefore, the fact that McInerney is the appointing authority, that he originally made the decision to terminate Duhani and that he served as the hearing officer are not sufficient to invalidate the pre-termination proceeding. The only question, therefore, is whether the added fact that McInerney also served as a fact witness tipped the balance. I find it does not, because Duhani has failed to assert any facts which would undermine the confidence in McInerney's decision. As Duhani's recognizes, McInerney did not base his decision solely on

the conflict between his recollection of events and Duhani's. Instead, McInerney's letter terminating Duhani reveals a thoughtful and measured process and that his reasons for terminating Duhani went well beyond the fact that his recollection of events differed from Duhani's. Signifciantly, McInerney relied heavily on the fact that Duhani's version of events differed from Thurlowe's and Crouse's testimony on material issues. Moreover, Duhani had a meaningful opportunity to present his own defense: he was represented by counsel, was permitted to present evidence and cross-examine witnesses. On the undisputed facts, therefore, it appears that essential function attributed by the Supreme Court in *Loudermill* to the pre-termination hearing was met, *i.e.*, the hearing served as a check against a mistake being made by ensuring there were reasonable grounds to find that the charges against Duhani were true and supported termination.

On the other hand, Duhani alleges more than bias on the part of McInerney—he alleges that the decision had been made to terminate him before the pre-termination hearing was held and therefore, that the hearing was for all intents and purposes a sham. He further alleges that members of the Board, those involved in the post-deprivation review, were similarly improperly motivated in that the Board, as a whole, desired to eliminate his job and create a new position to be filled by someone else. The gravamen of his argument is that members of the Board acting together with McInerney, exploited the purchase order controversy to achieve this goal. It is a close case as to whether Duhani as established that there are sufficient facts from which a jury could concluded that the outcome of his pre-termination hearing was predetermined. This is especially true if one considers the hearsay and speculative nature of material facts asserted by Duhani in support of his claim that McInerney and the Board had determined to eliminate the position of Director of the DPW sometime in 2008 or before. Nevertheless, drawing all

inferences in favor of Duhani, there is a genuine issue of material fact as to the sufficiency of the process Duhani received before he was terminated, that is, whether his pre-termination hearing and post-termination review violated his right to due process.

*Whether McInerney Is Entitled To Qualified Immunity*[5]

McInerney asserts that he is entitled to qualified immunity with respect claim because Duhani has failed to prove that his due process rights were violated because he served has both the hearing officer and a fact witness at the pre-termination hearing.[6] Duhani asserts that McInerney is not entitled to qualified immunity because a reasonable official in his position would have understood that acting as the hearing officer and terminating party while testifying as a witness to the precipitating events would violate his constitutional rights.

Public officials, such as McInerney:

> "have 'qualified immunity from personal liability for actions taken while performing discretionary functions.' The qualified immunity analysis requires a court to decide '(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly

---

[5] Both the caption and body of the Complaint state that McInerney is being sued in his official capacity. Claims against McInerney in his official capacity are treated as claims against the Town. Nonetheless, the parties have briefed the issue of whether McInerney is entitled to qualified immunity. The First Circuit has adopted a "course of proceedings" approach to determining whether a suit is an individual or official capacity suit. *Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004). Under this test, rather than relying solely on the face of the complaint, the court looks to the substance of the pleadings and the course of the pleadings. The court considers factors such as the nature of the plaintiff's claims, whether compensatory and/or punitive damages have been requested, the nature of defenses raised, including the defense of qualified immunity, and whether the litigation is in its early stages. *Id.* In this case, both the caption of the Complaint and references in the body of the Complaint (other than recitations of fact) refer to McInerney in "in his capacity as Town Administrator." Furthermore, Duhani does not seek punitive damages. This fact is significant since punitive damages are not available against individuals sued in their official capacity, whereas they would be available against a municipal official sued in his individual capacity. *Id.* Under the circumstances, a fair reading of the Complaint suggests that Duhani has brought an official capacity suit against McInerney. The factors which would favor treating this as an individual capacity suit are that the case is in its early stages, Defendants' have pleaded a qualified immunity defense, and the parties have briefed the issue of qualified immunity. Under the circumstances, McInerney would not be prejudiced by straining the express language of the Complaint to assert an individual capacity suit against him. Therefore, the Court will presume that McInerney is being sued in his individual capacity.

[6] Duhani has not argued that McInerney's motion for qualified immunity be denied on the grounds that McInerney deprived him of a meaningful pre-termination hearing because the outcome was predetermined. While it may have been a closer call as to whether McInerney would be entitled to qualified immunity on this issue, the Court will not second guess Duhani's decision to forgo this argument.

established" at the time of the defendant's alleged violation.' Courts may conduct this inquiry sequentially, or resolve a particular case on the second prong alone. The 'clearly established' prong has two aspects: (1) 'the clarity of the law at the time of the alleged civil rights violation,' and (2) whether, given the facts of the particular case, 'a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.' 'Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' In other words, 'the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional.' This does not mean that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,' but rather that 'in the light of pre-existing law the unlawfulness must be apparent.'

*Barton v. Clancy*, 632 F.3d 9, 21-22 (1st Cir. 2011).

I have found that the fact that Duhani was not entitled to an impartial hearing officer at his pre-termination hearing. Furthermore, that McInerney served as the terminating officer, hearing officer and a fact witness did not render the hearing constitutionally deficient. Since Duhani has failed to establish a violation of his constitutional right, McInerney is entitled to qualified immunity. Furthermore, even had I found that the fact that Duhani's constitutional right a meaningful pre-termination hearing had been violated because of the multiple roles assumed by McInerney at the hearing, he would be entitled to qualified immunity under the second prong of the qualified immunity analysis.

It is only McInerney's role as a fact witness that sets this case apart from the myriad of cases that have applied the black letter law that an employee is not entitled to an impartial hearing officer at his pre-termination hearing. However, Duhani has not cited to a single case, nor has the Court found a case, whereby a federal court held that an employee's procedural due process rights were violated because his hearing officer failed to recuse himself on the grounds that he could not render an impartial decision where he presided over the proceedings and

testified as a percipient witness. Furthermore, while at the time of the hearing, there may have been cases which suggested a *possible* due process violation where the hearing officer harbored ill will and actual bias against the employee, precedents did not suggest that due process required that a hearing officer recuse himself under the circumstances of this case.

For the reasons set forth above, I find that McInerney is entitled to qualified immunity as to the claim against him in his individual capacity. Therefore, the claim against him shall be dismissed. Accordingly, all that remains in this case is Duhani's claim against the Town on the narrow issue of whether the Town failed to provide him meaningful termination procedures as required by the Due Process Clause.

### Conclusion

It is hereby Ordered that:

Defendants, Town of Grafton and Timothy P. McInerney's Motion For Summary J. (Docket No. 20) is ***granted***, ***in part***, and ***denied***, ***in part***, as provided herein.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE